## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BILLY G. ASEMANI, #339-096          *

Plaintiff          *

v          *   Civil Action No. RDB-16-1170

WARDEN,          *

Defendant          *

***

### MEMORANDUM OPINION

Pending is self-represented Plaintiff Billy G. Asemani's "emergency petition" for injunctive relief. (ECF 1). Kathleen Green, former Warden at Eastern Correctional Institution ("ECI") [1] has filed a Motion to Dismiss, or in the Alternative, a Motion for Summary Judgment. (ECF No. 19). Also pending are Asemani's filing titled "Motion for Substitution of Parties Pursuant to FRCP No. 25, Notice of Withdrawal of Denial of Access to the Library Claim and Motion for Extension of Time to Respond to Defendant's Answer" (ECF No. 23) and a Motion to Substitute Party. (ECF No. 24).

Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which will be treated as a Motion for Summary Judgment, is ready for disposition and a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2016). Asemani's Motion to Withdraw Denial of Access to the Library Claim (contained in ECF No. 23), will be treated as a Motion for Voluntary Dismissal under Fed.R.Civ. P. 41(a), and GRANTED. Asemani's Motion to Substitute Party (contained in ECF No. 23, 24) IS DENIED. Asemani's Motion for an Extension of Time to file a Response after Substitution of Party (contained in ECF No. 23) IS DENIED as

---

[1] Kathleen Green was Warden at ECI at the time Asemani filed the Complaint. Green has since retired. (ECF No. 1 n. 1).

moot. Defendant's dispositive Motion (ECF No. 19), treated as a Motion for Summary Judgment (ECF No. 19), IS GRANTED.  Judgment will be entered in favor of Defendant.

## BACKGROUND

Asemani is incarcerated at ECI in Westover, Maryland.  Asemani alleges that he is permitted insufficient library time to work on his legal cases, has insufficient postage to send out his legal mail, and it takes too long to receive non-legal mail at ECI.  (ECF No. 1).  He claims that because his prisoner account balance has not been less than $4.00 for the past thirty days, he did not yet qualify as an indigent inmate, and there was no provision at ECI to provide him with postage for his outgoing legal mail.  (ECF No. 1 at p. 1.).

Asemani asserts that he requires one to two hours of library time per week to work on his post-conviction petition and to meet certain filing deadlines.  He does not, however, specify the deadline dates, what he needs to file, or why library access is necessary. *Id.* at p. 3.  Notably, he does not claim he actually missed any filing deadlines. Asemani claims that in the first 45 days after his transfer to ECI, he was allowed only one library visit and it was for one hour.  *Id.* Additionally, he complains that ECI mailroom staff delivers non-legal mail only once every two or three weeks, which delays his receipt of correspondence from parties who assist him with his legal activities.  Asemani admits those assisting him are not members of the legal community, and as such, their incoming mail is not considered legal mail. *Id.* at p. 2.  Asemani does not explain who these parties are or how they assist him with legal matters.  As relief, Asemani asks for "reasonable, workable, practical, and unhindered access to the courts."  ECF No. 1 at p. 3.

On April 4, 2016, Asemani filed Administrative Remedy Procedure ("ARP") request ECI-0650-16, complaining that because his prisoner account balance had not fallen below $4.00 in the past thirty days, he was ineligible for indigent inmate status which would excuse his

inability to pay for legal mailings. He stated that it would be at least three weeks before he was eligible for indigent inmate status and there was no provision at ECI to provide him with postage for his outgoing legal mail in the meantime. (ECF No. 1-1). In the ARP, Asemani indicated that four pieces of legal mail had been returned to him for insufficient funds. (ECF 1-1). He also indicated that he had 15 active legal cases in various federal and state courts. *Id.* Of these, trial dates were approaching in two cases. *Id.* Asemani stated that when he was housed at Western Correctional Institution ("WCI"), he had "reached an understanding with the Business Office" that when charges for postage were posted to his account and there were insufficient funds, the amount of the postage was debited to the "owed or due balance" account and he would pay the charge at another time. *Id.* Asemani proposed initiating such an arrangement to resolve his ARP. *Id.*

## DEFENDANT'S RESPONSE

Asemani transferred to ECI on March 4, 2016, from WCI. (ECF No. 19-2 ¶ 1, Decl. of Susan Shumaker, ECI Litigator Coordinator). He filed this Complaint on April 20, 2016. As an inmate on Protective Custody ("PC"), he receives up to one and one-half hours of library time each week. *Id.* ¶3. Since July 22, 2016, Asemani has held a prison job in the library which gives him additional time to access library resources. As a result, he receives more library time than the typical inmate at ECI. *Id.*

On April 4, 2016, Asemani filed ARP #ECI-ARP-0650-16 concerning his difficulty obtaining postage stamps and purported mail delays. He was asked to resubmit his ARP with more information, which he did on April 8, 2016. *Id.* ¶4. The ARP was dismissed because Asemani had the opportunity to purchase stamps but declined, and he did not qualify as indigent to excuse him from paying postage. *Id.* Further, there was no evidence to support his claim that

the mailroom was not sending out his mail. *Id.* Between March 4, 2016, when Asemani transferred to ECI, and April 20, 2016, when he filed this Complaint, Asemani did not file any other ARPs concerning his mail, access to the courts, or library time. *Id.*

Asemani has filed two relevant grievances with the Inmate Grievance Office ("IGO"). Both were filed *after* he filed the instant Complaint and dismissed on July 29, 2016. Asemani filed the first grievance, on May 24, 2016, as an appeal of ARP-0723-16, complaining his outgoing mail at ECI had been returned for insufficient postage. ECF No. 19-3 at ¶ 3(b) (Decl. of Robin Woolford, IGO Deputy Director). The IGO dismissed the first grievance on July 29, 2016, for failure to state a claim. *Id.* Asemani's second grievance was filed on June 3, 2016, and challenged the disposition of ARP-0650-16. *Id.* at ¶ 3(a). In it, he also complained that his legal mail had been returned due to insufficient funds and repeated his concerns about postage. *Id.*

## STANDARD OF REVIEW

### 1. MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). All four elements must be satisfied. *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089, (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24 (citing *Munaf v. Geren.* 553 U.S. 674, 689-90 (2008)); *Real Truth About Obama, Inc.,* 575 F.3d at 345 (4th Cir. 2009). A preliminary injunction is a remedy that is "'granted only

sparingly and in limited circumstances.'" *Micro Strategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)).   In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

### 2.  MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).   This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

### I.   PRELIMINARY INJUNCTIVE RELIEF

Asemani's allegations of harm as a result of insufficient postage and mail delays are at best speculative.   As noted, he fails to explain the nature of the legal mailings that were returned to him and how their return, or his purported inability to mail legal items, prejudiced the pursuit of his legal claims.   Accordingly, Asemani cannot show that he is likely to succeed on the merits or that he is likely to suffer irreparable harm in the absence of preliminary relief.   Moreover, Asemani provides no information to suggest that the balance of equities tips in his favor or that the extraordinary relief he requests would serve the public interest.   Asemani fails to sustain the heavy burden required for preliminary injunctive relief, and his request will be denied.

### II.   MOTION TO SUBSTITUTE PARTY

On January 5, 2017, two months after Defendant filed her Motion for Summary Judgment, Asemani filed his first Motion to Substitute ECI Mailroom Supervisor M. Switalski in lieu of Warden Green as Defendant.   (ECF No. 23).   On February 15, 2017, Asemani filed a second Motion to Substitute Switalski for Green.   (ECF No. 24).   Asemani indicates that unless the motion is granted, his complaint "is doomed."   *Id.* at p. 2.   Asemani fails to particularize his claims against Switalski and seeks additional time to file a "comprehensive response to Defendant's motions."   *Id.*   Even if this Court were to grant the Motion to Substitute Parties, Asemani raises no colorable claim against Switalski.   Because Asemani filed this action under 28

U.S.C. § 1915A, this Court must dismiss this case if there is no claim on which relief may be granted. 28 U.S.C. 28 U.S.C. §1915A(b)(1).

## III.   MOTION FOR SUMMARY JUDGMENT

Green argues that she is entitled to summary judgment because Asemani's claims are unexhausted, she did not personally participate in the matters alleged, and the Complaint fails to state a constitutional claim of denial of access to the courts.

### A.  EXHAUSTION

Inmates are required to exhaust "such administrative remedies as are available" before filing an action. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). This requirement is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An inmate's failure to exhaust administrative remedies is an affirmative defense; defendant bears the burden of proving that he had remedies available to him of which he failed to take advantage. *Jones v. Bock*, 549 U.S. 199, 211-12 (2007); *Moore*, 517 F.3d at 725.

Exhaustion is mandatory. *Ross*, 136 S.Ct. at 1857; *Jones* 549 U.S. at 219. A court may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion")). The purpose of exhaustion is to: 1) "allow[ ] a prison to address complaints about the program it administers before being subjected to suit"; 2) "reduce[ ] litigation to the extent complaints are satisfactorily resolved"; and 3) prepare a "useful record" in the event of litigation. *Jones*, 549 U.S. at 219. In *Ross*, the Supreme Court of the United States

identified three kinds of circumstances in which an administrative remedy is unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In Maryland, filing an ARP with the warden of the prison is the first of three steps in the ARP process. *See* Code of Md. Regs. ("COMAR"), tit. 12 § 07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR, tit. 12 § 07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR, tit. 12 § 07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the IGO. *See* Md. Corr. Servs., Code Ann. §§ 10-206, 10-210; COMAR, tit. 12 §§ 07.01.03, 07.01.05B.

Asemani avers that because he did not receive a receipt (part C- bottom portion of the ARP complaint) for the supplemental information he was required to submit in support of his ARP, this was "tantamount to there being no viable means of exhausting his remedies." (ECF No. 1 at p. 1). These allegations fail to establish the administrative remedy procedure was unavailable to him, operated as a dead end, was incapable of use, or that he was thwarted from using the process as contemplated in *Ross*, 136 S.Ct. at 1859. Asemani's own description proves his ARP was assigned a number, reviewed, determined to require additional information, and

then dismissed after supplemental information was received and reviewed.  While Asemani may not have received receipts for the supplemental filing, he received a reply to his inquiry from the ARP coordinator.  In short, Asemani fails to meet his burden to show the ARP process was unavailable to him.

Asemani does not dispute that he filed his IGO cases after he filed his Complaint in this Court.  Thus, it is uncontroverted his mail delivery and postage claims were unexhausted at the time he filed this case.  Further, Asemani did not file an ARP regarding delays with incoming non-legal mail.  Having failed to exhaust the initial step in the administrative process and providing no reason why that step was unavailable to him, his claims are unexhausted and may not be considered here.  To hold otherwise would frustrate the purpose of exhaustion.  Moreover, even if Asemani had exhausted his claims, they would prove unavailing for reasons to follow.

### B. CLAIMS AGAINST WARDEN GREEN

In a § 1983 action, liability is imposed on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights. . . ." 42 U.S.C. § 1983.  The statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th. Cir. 1977); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  Principles of respondeat superior do not apply in § 1983 actions.  *See Monell*, 436 U.S. at 690; *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  A supervisor may be held legally responsible based on principles of supervisory liability "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 255 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.

9

1984).  Supervisory liability requires evidence that: the supervisor "had actual or constructive knowledge" of a subordinate's conduct that posed "a pervasive and unreasonable risk" of constitutional injury, the supervisor's response was sufficiently inadequate to demonstrate "deliberate indifference or tacit authorization" of the actions alleged by plaintiff; and there was an "'affirmative causal link' between the supervisor's inaction" and plaintiff's constitutional injury." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  The Complaint makes no specific allegations of personal involvement by Warden Green, nor does it satisfy the requirements for supervisory liability.  Accordingly, Warden Green is entitled to summary judgment in her favor as a matter of law.

### C. DENIAL OF ACCESS TO COURT CLAIM

Prisoners have a constitutionally protected right of access to the courts.  *See Bounds v. Smith,* 430 U. S. 817, 821 (1977).  However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey,* 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show "actual injury" to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis,* 518 U.S. at 355).  "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks

assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 399.

In *Christopher v. Harbury*, 536 U.S. 403, 403 (2002), the Court characterized access-to-the courts claims as being in one of two categories. *Id.* at 413-14. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a Plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id.* at 1209. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress' "in the courts. *Id.* (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming denial of access to the courts must prove that he suffered an actual injury by showing that the Defendant's actions hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher,* 536 U.S. at 415.

Plaintiff must establish that his underlying claim was "nonfrivolous" or "arguable." *Christopher v. Harbury,* 536 U.S. at 415. "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show the 'arguable' nature of the underlying claim

is more than hope." *Id.* at 416 (footnote omitted). A prisoner's right to access the courts does not include the right to present frivolous claims. *See Lewis v. Casey*, 518 U.S. at 353 n.3. It is not enough that a prisoner is prevented from challenging his conviction. He must also show that his claim had merit.

Prisoners have a First Amendment right to communicate with the outside world by sending and receiving mail. *Thornburg v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safely*, 482 U.S. 78 (1987). The Supreme Court has recognized that an inmate's rights "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh*, 490 U.S. at 407, citing *Turner*, 482 U.S. at 8. Occasional incidents of delay or non-delivery of mail do not state a claim of constitutional dimension either. *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990).

Of import here, the Complaint does not claim Asemani suffered actual harm as a result of lack of postage or the mail delivery delays he alleges. Asemani, who is a frequent self-represented litigant in state and federal courts,[2] asserts only that he had four pieces of mail returned to him. Asemani does not describe the mail returned to him or assert he suffered actual injury as a result. Although Asemani references anticipated trials in two cases, he does not assert the returned mail was related to these cases or that its return prejudiced his pursuit of meritorious legal claims in other cases. More than the speculative allegations offered here are necessary to

---

[2] Asemani is a frequent self-represented litigator in this and other federal and state courts. For example, in 2012, the United States District Court for the Eastern District of Pennsylvania commented in a footnote that Asemani had filed some eighty civil lawsuits in federal district courts and participated in approximately fifty matters before the federal courts of appeals. *Asemani v. Secretary of Homeland Security*, 2012 WL 987484 *1 (E.D. Pa. March 22, 2012). The United States Supreme Court restricted Asemani's access to the Court for repeatedly abusing its process. *Asemani v. Chronister*, 561 U.S. 1003 (2010) ("As petitioner has repeatedly abused this Court's process, the Clerk is directed not to accept any further petitions in noncriminal matters from petitioner unless the docketing fee required by Rule 38(a) is paid and petition submitted in compliance with Rule 33.1."). Asemani continues to file suit in the District of Maryland, other federal courts, and in state court. The Maryland state electronic docket lists seventy-nine civil cases filed by Asemani in state court. http://casesearch.courts.state.md.us/casesearch/inquiry (accessed on March 24, 2017). Asemani has filed more than thirty cases in this Court.

show actual injury to predicate a constitutional claim.  There is no genuine issue of material fact at issue and Defendant is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, this Court shall DENY Asemani's request for preliminary injunctive relief (ECF No. 1), GRANT his Motion to Dismiss his library access claim (contained in ECF No. 23); DENY his Motion to Substitute Party (contained at ECF No. 23, ECF No. 24), and DENY AS MOOT his Motion for an Extension of Time (contained in ECF No. 23). This Court shall GRANT Defendant's Motion for Summary Judgment as to the postage and mail claims against her (ECF No. 19) and enter judgment in favor of Defendant.  A separate Order follows.

March 30, 2017

_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

13